# EXHIBIT "A"

1   MORAN·LAW
    Michael F. Moran SB# 121665
2   Alexander H. Feldman SB# 279613
    Damon A. Schwartz SB# 297392
3   5 Hutton Centre Drive, Suite 1050
    Santa Ana, CA 92707
4   Telephone: (714) 549-0333
    Facsimile: (714) 549-0444
5
    Attorneys for Plaintiff, CATHERINE ALBERI, in and through her Successor-In-Interest Dale
6   Ernst and DALE ERNST, an individual
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              COUNTY OF LOS ANGELES, CENTRAL DISTRICT
10                                              **BC 7 1 4 2 0 6**
11  CATHERINE ALBERI, in and through her      ) LASC CASE NO.:
    Successor-In-Interest Dale Ernst, and DALE )
12  ERNST, an individual                      )
                                              ) **COMPLAINT FOR:**
13                    Plaintiffs,              )
                                              ) 1. **ELDER ABUSE** (<u>Welfare and
14                                             )    Institutions Code</u> § 15600, et seq.)
              vs.                             ) 2. **NEGLIGENCE**
15                                             ) 3. **VIOLATION OF CALIFORNIA**
16  SSC TARZANA OPERATING COMPANY            )    <u>**HEALTH & SAFETY CODE**</u> §
    LP dba TARZANA HEALTH AND                 )    **1430(B)**
17  REHABILITATION CENTER; SSC                ) 4. **WILLFUL MISCONDUCT**
    TARZANA OPERATING GP LLC; and             ) 5. **WRONGFUL DEATH**
18  DOES 1 through 40, inclusive,             )
19                                             )
                      Defendants.              )
20                                             )
                                              )
21        The Plaintiff, CATHERINE ALBERI, in and through her Successor-In-Interest Dale
22  Ernst and DALE ERNST, an individual, allege as follows:
23                    <u>**JURISDICTIONAL ALLEGATIONS**</u>
24        1.    DALE ERNST brings this action in his own right, and on behalf of as
25  Successor-In-Interest to, CATHERINE ALBERI (hereinafter referred to as "Ms. ALBERI"),
26  pursuant to California <u>Code of Civil Procedure</u> § 377.30, and has prepared a Declaration
27  under penalty of perjury with respect to his Successor-in-Interest rights concerning this matter
28  in compliance with Section 377.32, a copy of which is attached to this Complaint as Exhibit

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 1 3 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By: Judi Lara, Deputy

1

1    "1."

2         2.      Plaintiff Ms. ALBERI is an individual and was at all times mentioned in this

3    Complaint a resident of the County of Los Angeles, California, residing at 5650 Reseda Blvd.,

4    Tarzana, CA 91356.

5         3.      The basis of this action is the elder abuse and neglect suffered by Ms.

6    ALBERI, which occurred at TARZANA HEALTH AND REHABILITATION CENTER

7    (hereinafter referred to as "TARZANA FACILITY"), located at 5650 Reseda Blvd., Tarzana,

8    CA 91356.

9         4.      Plaintiffs are informed and believes that the Defendant SSC TARZANA

10   OPERATING COMPANY LP ("TARZANA COMPANY") is and was at all times mentioned

11   in this complaint, in the business of providing long-term care as a skilled nursing facility as

12   defined in Health & Safety Code § 1250(c) under the name TARZANA HEALTH AND

13   REHABILITATION CENTER ("TARZANA FACILITY"). TARZANA COMPANY is the

14   licensee of TARZANA FACILITY, with its principal place of business located at 5650

15   Reseda Blvd., Tarzana, CA 91356.

16        5.      SSC TARZANA OPERATING GP LLC ("TARZANA GP") is the general

17   partner of TARZANA COMPANY. TARZANA GP is a foreign limited liability company

18   with a principal place of business at 1209 Orange Street, Wilmington, Delaware, 19801, that

19   has elected CT Corporation as its agent for service of process in California.

20        6.      TARZANA GP, TARZANA COMPANY, and DOE Defendants 1 through 10,

21   inclusive, were the operators and managers of TARZANA FACILITY, and each participated

22   in, authorized, ratified and/or directed the conduct as hereinafter described and are therefore

23   jointly or vicariously liable for the acts and omissions of TARZANA FACILITY, its agents,

24   and employees.

25        7.      At all times mentioned herein, DOE Defendants 11 through 40, inclusive, are

26   those persons or entities whose conduct caused the injuries and damages alleged herein.

27        8.      Plaintiffs are ignorant of the true names of Defendants DOES 1 through 40,

28   inclusive. Plaintiffs sue those Defendants by such fictitious names pursuant to California

1   Code of Civil Procedure § 474.  Plaintiffs will seek leave of Court to amend this Complaint to

2   identify said Defendants when their identities are ascertained. Plaintiffs are informed and

3   believe, and on that basis allege, that each of the fictitiously named Defendants was in some

4   fashion or manner liable and legally responsible for the damages and injuries set forth herein.

5                                   **GENERAL ALLEGATIONS**

6          9.      Ms. ALBERI was born on December 10, 1941.

7          10.     At all relevant times, Ms. ALBERI was 75 years old and thus defined as an

8   "elder" as that term is defined by Welfare and Institutions Code § 15610.27.

9          11.     At all times relevant to this action, Defendants, TARZANA GP, TARZANA

10  COMPANY, and TARZANA FACILITY, as the owners, operators, and managers of

11  TARZANA FACILITY, and DOES 1 – 40, were, at the time of the wrongful and abusive acts

12  hereinafter alleged, acting as "care custodians" as defined in California Welfare and

13  Institutions Code § 15610.17, during Ms. ALBERI's admission at TARZANA FACILITY

14  and upon whom she depended in the manner and degree hereinafter alleged for the

15  performance of their custodial duties.

16         12.     Ms. ALBERI was admitted to TARZANA FACILITY after suffering paralysis,

17  which left her dependent on others for the provision of food, shelter, medical treatment, and

18  assistance with all her activities of daily living ("ADL's").

19         13.     During Ms. ALBERI'S admission at TARZANA FACILITY, Defendants

20  TARZANA GP, TARZANA COMPANY, TARZANA FACILITY, and DOES 1-40, while

21  acting as custodial caregivers for Ms. ALBERI, neglected and abandoned her custodial care,

22  failed to protect her from health hazards, failed to provide medical care for her physical and

23  mental health needs, and failed to exercise the degree of care that a reasonable person in a like

24  position would exercise. All such acts constitute reckless "neglect" as defined in Welfare and

25  Institutions Code § 15610.57 and delineated in Delaney v. Baker (1999) 20 Cal.4th 23, 31-32,

26  35, such that Ms. ALBERI had the majority of her teeth removed from poor dental hygiene,

27  parotitis (inflamed salivary glands) from poor dental hygiene, bone infections in her foot

28  ("osteomyelitis") from an untreated pressure sore,  facial cellulitis from inadequate hygiene,

1  severe malnutrition from not being provided an adequate diet, dehydration from not being

2  provided adequate fluids, urinary tract infections as a result of poor catheter hygiene, and

3  sepsis. Defendants' staff also failed to offload pressure to her lower extremities causing her

4  to develop a Stage 2 pressure ulcer to her coccyx, a Stage 2 pressure ulcer to her sacrum, an

5  unstageable pressure ulcer to her hip, and a Stage 4 pressure ulcer to her left foot which was

6  the site of the osteomyelitis.

7        14.    Ms. ALBERI presented to Kaiser Woodland Hills on numerous occasions in

8  2017 for altered mentation, UTI's, pain, pressure sores, and sepsis. She was then discharged

9  back to TARZANA FACILITY.

10        15.    Defendants' nursing staff, despite being on notice of Ms. ALBERI's condition

11  upon re-admission to TARZANA FACILITY, and despite knowing that these conditions

12  warranted monitoring and treatment, took no action to address the imminent threat to her

13  health and safety presented by neglecting these conditions further. Defendants' staff knew

14  that if Ms. ALBERI's nutritional needs were ignored, her dental / facial / urinary hygiene

15  needs were ignored, her need to be turned and repositioned to offload the pressure on her

16  pressure sores was ignored, and her hydration needs were ignored, her health would suffer

17  and she would experience multi-organ failure and death secondary to shock. Despite knowing

18  the imminent danger faced by Ms. ALBERI as a result of Defendants' neglect, Defendants'

19  staff failed to notify her physician about these life-threatening medical conditions and failed

20  to transfer her to a hospital so that she could receive the necessary level of medical care to

21  address her medical needs.

22  **Defendants' Neglect Resulted in the Development of Multiple Decubitus Pressure Ulcers**

23        16.    Title 22 California Code of Regulations ("CCR") § 72315(f) requires that

24  nursing home personnel provide the patient with an adequate level of care to prevent the

25  development of avoidable decubitus pressure ulcers. The care mandated by § 73215 includes

26  but is not limited to the following: 1) repositioning of the patient; 2) skin care; 3) maintaining

27  proper body alignment and joint movement; 4) following physician orders; and, 5) keeping

28  the patient's skin clean and dry and free from feces or urine.

4

1        17.     Despite these clear, reasonable prescriptions, Defendants' staff routinely failed
2    to satisfy the standard of care set forth by § 73215. Ms. ALBERI was often left lying in bed,
3    unattended and unassisted for long periods of time. She was left sitting in soiled diapers
4    because Defendants' facility did not have an adequate number of clinical staff to assist Ms.
5    ALBERI with timely diaper changes.  She was provided inadequate urinary catheter hygiene
6    because Defendants' facility did not have an adequate number of clinical staff to perform
7    timely catheter changes and cleaning. On August 16, 2017, Ms. Alberi presented to Kaiser
8    Woodland Hills Hospital for chest pain, which resolved at the hospital.  She was noted to
9    have a Stage 2 pressure ulcer to her coccyx.  She was discharged to TARZANA FACILITY
10    on August 18, 2017.

11        18.     However, when Ms. ALBERI presented to Kaiser Woodland Hills Hospital on
12    September 18, 2017, in addition to the Stage 2 pressure ulcer on her coccyx, she now had an
13    unstageable pressure ulcer on her left hip, a Stage 2 pressure ulcer on her sacrum, and an
14    unstageable pressure ulcer on left foot.  After a podiatric and wound care consult regarding
15    the ulcer on her left foot, it was determined that the wound was a Stage 4 pressure ulcer, there
16    was osteomyelitis, and she required surgical intervention with the foot.  The Stage 4 pressure
17    ulcer was subsequently debrided of necrotic tissue down to the bone.  The ulcers indicate that
18    she was left sitting and laying down in the same position for prolonged periods of time on her
19    buttocks and back and was not turned and repositioned every two hours as required by her
20    plan of care to prevent pressure ulcers.

21        19.     Defendants' personnel knew that Ms. ALBERI had a bedsore on her coccyx
22    which continued to deteriorate in the absence of adequate and proactive custodial care.  The
23    wound worsened under Defendants' care and she developed additional pressure sores in the
24    same area of her body and also her foot - eventually penetrated to Ms. ALBERI's tissue and
25    bone - causing osteomyelitis. Ms. ALBERI's pressure ulcer was caused by ischemic damage
26    due to the failure by Defendants' staff to turn and reposition her while knowing that she was
27    dependent on others for bed mobility and already had a pressure ulcer.

28

1    20.    Ms. ALBERI developed these multiple pressure wounds as a result of an

2  inadequate level of staffing, which was intentional and directed by Defendants' corporate

3  managing agents - TARZANA GP, TARZANA COMPANY, and DOES 1-10.

4    **Failure to Undertake the Custodial Care Necessary to Prevent Dehydration**

5    21.    Ms. ALBERI became severely malnourished and dehydrated while residing at

6  Defendants' facility. Ms. ALBERI was so dehydrated, as a result of Defendants' withholding

7  of fluids, that she experienced profound acute kidney failure. As a paraplegic, Ms. ALBERI

8  required assistance with eating and drinking. As a result of not having enough feeding

9  assistants due to the intentional understaffing scheme at Defendants' facility of minimizing

10 labor costs to increase profits, Ms. ALBERI was denied adequate hydration and nutrition. On

11 September 22, 2017, after being transferred from TARZANA FACILITY, physicians at

12 Kaiser Woodland Hills Hospital noted Ms. Alberi had severe protein calorie nutrition, was

13 very malnourished, and was dehydrated.

14    **Defendants' Failure to Provide Plaintiff with Sufficient Oral Hygiene Services Caused**

15    **Her to Lose Her Teeth and Develop Parotitis**

16    22.    On September 22, 2017, Ms. ALBERI presented to Kaiser Woodland Hills

17 Hospital with redness on the left side of her face, swelling, and pain. She was diagnosed with

18 parotitis (inflammation of the salivary glands). Physicians noted pus expressed from the

19 gland and that the parotitis was likely due to dehydration and poor dental hygiene. Ms. Alberi

20 was not provided adequate oral hygiene at TARZANA FACILITY. The lack of CNAs to

21 provide oral hygiene resulted in Ms. ALBERI having the majority of her teeth pulled out

22 because of decay and infection.

23    **Defendants' Failure to Provide Plaintiff with Sufficient Perineal Hygiene Services**

24    **Caused Her to Develop Urinary Tract Infections**

25    23.    On September 22, 2017, Ms. ALBERI was diagnosed with severe sepsis and

26 acute organ dysfunction at Kaiser Woodland Hills Hospital. She was diagnosed with a urinary

27 tract infection which required antibiotic treatment. As a paraplegic, Defendants' staff knew

28 that she was completely dependent on others for hygiene services, yet they routinely failed to

1   bathe and provide perineal hygiene to Ms. ALBERI as a result of not having enough certified

2   nurse's assistants ("CNAs") to provide the care and services required to meet the needs of the

3   residents residing at TARZANA FACILITY.

4   **Allegations of Wrongful Conduct Against ALL DEFENDANTS and DOES 1-40,**

5   **inclusive**

6       24.    Ms. ALBERI's injuries were entirely preventable had the Defendants,

7   TARZANA FACILITY, its managers TARZANA GP and TARZANA COMPANY, and

8   DOES 1 - 40, provided enough sufficiently trained staff at TARZANA FACILITY to provide

9   Ms. ALBERI with the amount of care that state and federal regulations require. According to

10  Defendants own medical records, the facility was so understaffed that it did not have the

11  personnel required to provide Ms. ALBERI assistance with eating, drinking, and basic

12  hygiene services, to implement and execute patient care plans and physician orders or notify

13  Ms. ALBERI's physician of changes in Ms. ALBERI's condition, which clearly warranted

14  professional medical intervention.

15      25.    TARZANA GP and TARZANA COMPANY are liable for the Plaintiff's

16  injuries through its own misconduct—namely that it instituted, established, implemented, and

17  compelled compliance with policies and procedures at the facility level (namely chronic

18  understaffing and under-funding of the facility), which resulted in the injuries suffered by Ms.

19  ALBERI. TARZANA GP and TARZANA COMPANY directly oversaw, managed, and

20  controlled all aspects of the operation and management of TARZANA FACILITY, including,

21  but not limited to: managing the facility's budget, staffing, staff training, and creating the

22  facility's policies and procedures which directed the patient care received by Ms. ALBERI.

23  TARZANA GP and TARZANA COMPANY is responsible for overseeing all operational

24  aspects of TARZANA FACILITY and requires compliance with TARZANA GP and

25  TARZANA COMPANY's company standards involving resident care, rehabilitative services,

26  recruitment and personnel matters, state regulatory requirements, marking and sales

27  initiatives. Defendants TARZANA GP and TARZANA COMPANY were responsible for

28  guiding, directing, supervising, and controlling patient care in the facility. Hence,

7

1  TARZANA GP and TARZANA COMPANY are directly responsible for the patient care, or

2  lack thereof, which harmed the Plaintiff in this case. In sum, TARZANA GP, TARZANA

3  COMPANY, and TARZANA FACILITY, are operating as a single unit and joint enterprise

4  making them all liable for the injuries suffered by Ms. ALBERI.

5       26.     TARZANA GP owed a direct and independent duty of care to Plaintiff Ms.

6  ALBERI. TARZANA GP had a duty to provide general regulatory compliance support

7  services to include compliance with the state and federal regulations which govern patient

8  care in skilled nursing facilities. TARZANA GP also had the duty to evaluate the performance

9  of the nursing department which included the area of infection prevention/management and

10  skin breakdown prevention. Moreover, TARZANA GP, TARZANA COMPANY, and

11  TARZANA FACILITY, combined their property, skill, and knowledge to operate the skilled

12  nursing facility doing business as TARZANA HEALTH AND REHABILITATION

13  CENTER. Furthermore, TARZANA GP, TARZANA COMPANY, and TARZANA

14  FACILITY agreed to share in the control, profits, and losses of the nursing home business.

15  **FIRST CAUSE OF ACTION**

16  **Violation of Elder and Dependent Adult Civil Protection Act**

17  **[Welfare and Institutions Code § 15600, et seq.]**

18  **(By Plaintiff CATHERINE ALBERI Against All Defendants)**

19       27.     Plaintiff refers to and incorporates all previous paragraphs as though fully set

20  forth herein.

21       28.     Ms. ALBERI, at all relevant times, was over the age of 65 and thus considered

22  an "elder" as that term is defined in Welfare and Institutions Code § 15610.27.

23       29.     As defined in Health & Safety Code § 1250(a), Defendants and DOES 1-40,

24  are and were, at all relevant times, in the business of providing long-term care as a 24-hour

25  health facility and are subject to the requirements of federal and state law.

26       30.     Welfare and Institutions Code § 15610.07 specifically defines "abuse of an

27  elder and dependent adult" to mean either (a) physical abuse, neglect, financial abuse,

28  abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or

8

1 | mental suffering, or (b) the deprivation by a care custodian of goods or services that are

2 | necessary to avoid physical harm or mental suffering.

3 | 31. Welfare and Institutions Code § 15610.57(a) specifically defines "neglect" for

4 | purposes of EADACPA as (1) negligent failure of any person having the care or custody of an

5 | elder or a dependent adult to exercise that degree of care that a reasonable person in a like

6 | position would exercise, or (2) the negligent failure of an elder or dependent adult to exercise

7 | that degree of self-care that a reasonable person in a like position would exercise.

8 | 32. The elements of a claim for elder abuse/neglect, as set forth in the California

9 | Approved Jury Instructions (CACI) 3103 are:

10 |     (a)    That the Defendant had care or custody of the Plaintiff;

11 |     (b)    That the Plaintiff was 65 years of age or older or a dependent adult

12 |            while he was in Defendant's care or custody

13 |     (c)    That Defendant failed to use the degree of care that a reasonable person

14 |            in the same situation would have used in assisting in personal hygiene,

15 |            in providing medical care for physical and mental health needs, in

16 |            protecting Plaintiff from health and safety hazards, preventing

17 |            malnutrition or dehydration.

18 |     (d)    That Plaintiff was harmed; and,

19 |     (e)    That Defendant's conduct was a substantial factor in causing the

20 |            Plaintiff's harm.

21 | 33. Welfare and Institutions Code § 15657 further provides that Ms. ALBERI may

22 | recover enhanced damages for elder abuse where it is proven by clear and convincing

23 | evidence that a defendant is liable for physical abuse as defined in section 15610.63, neglect

24 | as defined in section 15610.57, or financial abuse as defined in section 15610.30, and that the

25 | Defendants, and each of them, have been guilty of recklessness in the commission of this

26 | abuse, in addition to all other remedies otherwise provided by law.

27

28

## CORPORATE MANAGING AGENT RATIFICATION

34.     At all relevant times, the reference to "managing agent," for purposes of managing agent ratification is used as that term is defined in *California Approved Jury Instructions (CACI)* 3102B. Pursuant to *CACI* 3102B, "an employee is a 'managing agent' if his or his exercises substantial independent authority and judgment in his or his corporate decision making so that his or his decisions ultimately determine corporate policy." The managing agents of the Defendants and their facility include, but are not limited to: Directors of Nursing, Charge Nurses, Administrator, Director of Staff Development, and all clinical nursing personnel provided authority to exercise substantial professional judgment.

35.     At all relevant times, Defendants through their managers, directors, officers, and other agents directly oversaw, managed, and/or controlled all aspects of the operation and management of TARZANA FACILITY, including but not limited to their facility's budgeting, staffing, staff training, and developing of policies and procedures manuals.

36.     That at all relevant times, the Defendants through their clinical/nursing managers, directors, officers, and other agents, created operating budgets, provided medical care, and developed policies and procedures which, TARZANA FACILITY 's employees were required to implement and follow.

37.     The Defendants, specifically the Administrator and Director of Nursing Services are responsible for providing appropriate and necessary clinical staffing at all times to properly implement physician orders and all issues set forth in their respective corporate care plans. The clinical staffing is a corporate ratification issue that is controlled by people who have substantial independent authority and judgment. The facility was insufficiently staffed to implement their corporate care plans, physician's orders, and provide its patients with medical care and treatment. These managing agents failed to provide appropriate and medically necessary staffing at their facility, which resulted in the custodial neglect that caused Ms. ALBERI's injuries.

38.     Ms. ALBERI was also diagnosed with multiple Stage 2 pressure sores on her body and a Stage 4 pressure ulcer to her foot. The foot ulcer had penetrated to Ms. ALBERI's

10

1   bone, ultimately causing osteomyelitis, or infection of the bone. Ms. ALBERI's stage 4

2   pressure ulcers were caused by ischemic damage and subsequent necrosis to Mr. PANOPIO's

3   tissue resulting from intense and prolonged pressure due to the failure by Defendants' staff to

4   turn and reposition Mr. PANOPIO while knowing that as a paraplegic, he was dependent on

5   others for bed mobility. He also had unstageable wounds to the left and right ischium as a

6   result of being left on his side for extended periods of time and not being turned and

7   repositioned as required by his plan of care. Ms. ALBERI developed these multiple pressure

8   wounds as a result of an inadequate level of staffing, which was intentional and directed by

9   Defendants' corporate managing agents.

10          39.      The Defendants implemented a plan to wrongfully increase their business

11  profits at the expense of patients such as Ms. ALBERI. Integral to this plan was the practice

12  and pattern of Defendants staffing its facilities with an insufficient number of care personnel,

13  many of whom were not properly trained nor qualified to care for the elders whose lives were

14  entrusted to them. The under staffing and lack of training was designed to reduce labor costs

15  and to increase profits, but with the inevitable result of physical abuse and neglect of many

16  patients at TARZANA FACILITY, and most specifically, Ms. ALBERI. TARZANA GP,

17  TARZANA COMPANY, and TARZANA FACILITY, knew that understaffing with

18  underqualified personnel would result in higher profits - but would also result in an increased

19  risk of harm and injury to residents. Thus, the corporate policy to provide insufficient levels

20  of staffing was developed and implemented with the conscious disregard for the health and

21  safety of those who it was supposed to protect, including Ms. ALBERI, who suffered as a

22  direct consequence of the Defendants' proprietary interests.   As a result, Defendants'

23  managing agents ratified the wrongful practice of understaffing despite the known and likely

24  harm and injury to residents that would result.

25          40.      Further, at all times herein mentioned, Defendants' managing agents

26  authorized and ratified the wrongful acts by TARZANA FACILITY employees by failing to

27  discipline and or dismiss employees engaged in the wrongful conduct which harmed Ms.

28  ALBERI.

11

COMPLAINT

## SECOND CAUSE OF ACTION

### Negligence

### (By Plaintiff CATHERINE ALBERI Against All Defendants)

41.     Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

42.     At all times herein mentioned, TARZANA GP, TARZANA COMPANY, TARZANA FACILITY, and DOES 1-40, and each of them, owed Ms. ALBERI a duty of care as a completely dependent, elderly resident, while in the custody and care of the Defendants. Such duty included, but was not limited to, the duty to operate and manage the care facility in a conscientious manner to protect the physical safety and well-being of the persons entrusted to their care by exercising due care in hiring managers and employees, by properly training and supervising staff responsible for medical care and treatment of such a resident, and by taking the necessary actions and precautions to maintain the safety of those persons under their care, including Ms. ALBERI.

43.     Defendant owed a special duty of care to Ms. ALBERI as a person of advanced age who was unable to care for herself independently during her admission at TARZANA FACILITY. Defendant affirmatively assumed responsibility for a heightened degree of supervision and standard of care with respect to a person of advanced age who was dependent on others for all ADL's, eating, drinking, and mobility.

44.     At the time of Ms. ALBERI's admission, there were statutory and regulatory duties imposed upon the Defendant. Such duties included the following, all of which were breached with regards to the care and treatment of Ms. ALBERI:

      a.  Provide adequate monitoring, assessment and re-assessment of Plaintiff's condition to ensure that she received proper treatment; .

      b.  Provide adequate medical attention by timely transferring the Plaintiff to an acute facility;

      c.  Implement physician orders to manage Plaintiff's medical conditions;

12

       d.   Develop and update individual care plans to address Ms. ALBERI's infections, and;

       e.   Promptly notify Ms. ALBERI's attending physician and responsible party of her changes in condition.

45.    As a result of these breaches in these duties of care, Ms. ALBERI suffered from dehydration, multiple bedsores, parotitis, the loss of most of her teeth, urinary tract infections, malnutrition, sepsis, organ failure, and osteomyelitis, while under the care and custody of TARZANA FACILITY.

46.    Ms. ALBERI is a member of a group of persons the statutes and regulations are intended to protect.

47.    Defendants' conduct violated the statutes and regulations, which was the direct, actual, legal, and proximate cause of Ms. ALBERI's injuries.  Such conduct is therefore Negligent Per Se.

48.    As a direct and proximate legal result of Defendants' acts, omissions, or conduct, Ms. ALBERI sustained and incurred losses, injuries and damages, including medical expenses in an amount to be proven at trial in excess of the minimum jurisdictional limits of this court.

## THIRD CAUSES OF ACTION

### Violation of Patient's Bill of Rights Pursuant to Health and Safety Code § 1430(b)

### (By Plaintiff CATHERINE ALBERI Against Defendant SSC TARZANA OPERATING COMPANY LP ("TARZANA COMPANY"))

49.    The Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

50.    At the time of Ms. ALBERI's admission at TARZANA FACILITY, TARZANA COMPANY was the licensee of TARZANA FACILITY.  As the licensee of a skilled nursing facility, there were statutory and regulatory duties imposed upon that Defendant pursuant to California Health & Safety Code section 1430(b).

13

51.     Health & Safety Code § 1430(b) states that "a current or former resident of a skilled nursing facility, as defined in subdivision (c) of Section 1250 . . . may bring a civil action against the **licensee** of a facility who violates any right of the resident or patient as set forth in the Patient's Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, **or any other right provided for by federal or state law or regulation**."

52.     The Patient's Bills of Rights as codified in 22 C.C.R. § 72527, mandates that the facility shall ensure that the Patient's Rights are not violated.  TARZANA FACILITY and DOES 1-40 violated Ms. ALBERI's rights to include but not limited to:

a.  Title 22 C.C.R. § 72527(a)(9), which states that a resident shall be free from mental and physical abuse;

b.  Title 22 C.C.R. § 72527(a)(25) which references rights in Health and Safety Code § 1599.1(b), which states that "each patient shall show evidence of good personal hygiene";

c.  Title 22 C.C.R. § 72527(a)(24) which references rights in Health and Safety Code § 1599.1, which states that a facility must provide sufficient staffing to meet the needs of its residents (Health and Safety Code § 1599.1(a));

d.  Providing adequate medical attention by timely transferring the Plaintiff to an acute facility in violation of the requirements set forth in 22 C.C.R. §§ 72301(a), 72307(a), 72311(a)(3)(B), 72515(b); and 42 C.F.R. §§ 483.10(b)(11), 483.20, 483.75(n);

e.  Notifying the physician of the Plaintiff's changes in condition and of unusual occurrences in violation of 22 C.C.R. § 72311(a)(3)(B) and (C);

f.  Responding to call signals promptly in violation of 22 C.C.R. § 72315(m).

g.  Developing and updating a written care plan which indicates the care to be given by the nursing staff with the Plaintiff's change in condition in violation of 22 C.C.R. § 72311(a)(1)(C);

h.  Title 22 C.C.R. §§ 72311(a)(1)(A) and (C), (a)(2) and (a)(3)(B), which requires the FACILITY to review, update, and evaluate, the patient care plan

14

1     as indicated and implement the patient's care plan according to the methods

2     indicated;

3        i.   Health and Safety Code § 1599.1(c), which states that each patient shall show

4             evidence of good personal hygiene and be given care to prevent bedsores.

5     53.    As a resident of a skilled nursing facility, Ms. ALBERI is a member of a group

6   of persons that Health and Safety Code § 1430(b) is intended to protect.

7     54.    **Plaintiff CATHERINE ALBERI claims a separate cause of action for each**

8   **violation of his rights under Title 22 of the California Code of Regulations and Title 42**

9   **of the Code of Federal Regulations as itemized in paragraph 52 (as though fully set forth**

10  **here, but condensed for brevity)**

11    55.    Plaintiff CATHERINE ALBERI also claims the recovery of up to five hundred

12  dollars ($500) **per cause of action** under Health and Safety Code § 1430(b), injunctive relief,

13  and for costs and attorney fees.

14                          **FOURTH CAUSE OF ACTION**

15                              **Willful Misconduct**

16              **(By Plaintiff CATHERINE ALBERI Against All Defendants)**

17    56.    Plaintiff refers to and incorporates all previous as though fully set forth herein.

18    57.    At all times mentioned, Defendants, and each of them, knew that the failure to

19  provide care and treatment according to the applicable state and federal regulations which are

20  specifically designed for resident safety, would, given Ms. ALBERI's physical and mental

21  condition coupled with her high degree of dependence upon the Defendants, pose the

22  probability that she would sustain serious physical and mental injuries.

23    58.    Notwithstanding the aforesaid knowledge, Defendants, and each of them,

24  consciously disregarded their duty to provide the degree of care sufficient to meet legal

25  standards established for such care and failed to provide such care, thereby subjecting Ms.

26  ALBERI to the probability of serious injury.  In particular, and without limiting the generality

27  of the foregoing, said Defendants failed to provide Ms. ALBERI assistance with food, fluids,

28  hygiene, and the necessary custodial care services to prevent the formation of pressure ulcers,

1  failures which were caused by inadequate nursing and support nursing staffing in the

2  statutorily required ratios to meet the acuity needs of Ms. ALBERI.

3       59.    Further, the Defendants, and each of them, knew that Ms. ALBERI was an

4  elder adult and willfully caused Ms. ALBERI to suffer unjustifiable physical pain and mental

5  suffering by subjecting her to circumstances and conditions likely to produce great bodily

6  harm.

7       60.    At all relevant times, Defendants knew of the need for these regulations and

8  laws, knew that the lives and health of their residents were at risk whenever they failed to

9  meet such duties, and knew that the failure to comply with such duties would result in injuries

10  to their residents, including Ms. ALBERI.  In breaching these duties, Defendants, and each of

11  them, acted intentionally - evidenced by the conscious failure to eliminate known risks to Ms.

12  ALBERI's health and safety stemming from their scheme of keeping resident care expenses at

13  inadequate levels to increase the private profits of their largely publicly funded business

14  operations.

15       61.    These wrongful acts were committed with recklessness, oppression, fraud, and

16  malice, and Plaintiff requests an appropriate award of punitive damages against each

17  Defendant.

18                         **FIFTH CAUSE OF ACTION**

19                        **Wrongful Death - C.C.P. § 377.60**

20        **(By Plaintiff, DALE ERNST, an individual, Against All Defendants)**

21       62.    Plaintiffs refer to and incorporate all previous paragraphs as though fully set

22  forth herein against all DEFENDANTS and DOES 1-40.  Plaintiff DALE ERNST brings this

23  cause of action under California Code of Civil Procedure § 377.60.

24       63.    As a proximate result of the conduct of DEFENDANTS as alleged in

25  paragraphs 8-60, Ms. ALBERI died on October 2, 2017, after being placed on hospice

26  September 28, 2017.  Ms. ALBERI presented to Kaiser Woodland Hills Hospital on

27  September 22, 2017, directly from TARZANA FACILITY, with a diagnosis of severe sepsis

28  with acute organ dysfunction.  She was malnourished and dehydrated, had a urinary tract

1  infection, parotitis, and had pressure sores all over her body, including a Stage 4 ulcer on her

2  foot with osteomyelitis that required surgery.  She was crying in pain despite being on

3  morphine.  To stop Ms. ALBERI from suffering, she was put on hospice at Kaiser and passed

4  within 5 days.

5       64.  Ms. ALBERI was the mother to DALE ERNST.  Prior to Ms. ALBERI's

6  death, DALE ERNST was dependent upon his mother for love, care, comfort, emotional

7  support, companionship, and society. Ms. ALBERI was a loving and dutiful mother to

8  Plaintiff DALE ERNST.

9       65.  As a proximate result of the respective conduct of DEFENDANTS, and the

10  death of Ms. ALBERI, Plaintiff DALE ERNST has been deprived of the society, comfort,

11  attention, services and emotional support of Ms. ALBERI, in a sum according to proof at trial.

12       **WHEREFORE**, Plaintiffs pray for the following against Defendants, and each of

13  them:

14  <u>**On the First Cause of Action (Elder Abuse)**</u>

15       1.  For general damages according to proof.

16       2.  For special damages according to proof.

17       3.  For punitive/exemplary damages pursuant to California <u>Welfare and</u>

18  <u>Institutions Code</u> § 15657, et. seq. and <u>Covenant Care v. Superior Court</u> (2004) 32 Cal.4th

19  771. Pursuant to statute and the California Supreme Court case of <u>Covenant Care</u>, <u>supra</u>,

20  Plaintiff is entitled to set forth and plead punitive damages as enhanced and heightened

21  remedies pursuant to <u>Welfare & Institutions Code</u> §15657 and is not required, pursuant to

22  <u>C.C.P.</u> § 425.13, to acquire judicial relief to seek punitive damages.

23       4.  For reasonable attorney's fees and costs of suit which must be awarded

24  pursuant to <u>Welfare and Institutions Code</u> §15657(a), should the Plaintiff meet and sustain

25  their burden of proof as to cause of action No. 1.

26  <u>**On the Second Cause of Action (Negligence)**</u>

27       5.  For general damages according to proof.

28       6.  For special damages according to proof.

17

**On the Third Causes of Action (*Health and Safety Code § 1430(b) Violation*)**

7.     For injunctive relief, five hundred dollars ($500) for each cause of action, plus costs and attorney fees.

**On the Fourth Cause of Action (Willful Misconduct)**

8.     For general damages according to proof.

9.     For punitive damages according to proof.

**On the Fifth Cause of Action (Wrongful Death)**

10.     For general damages according to proof.

11.     For special damages according to proof.

**As to All Causes of Action**

12.     For costs and interest in an amount to be proven at trial, and;

11.     For such other and further relief as the court may deem just and proper.

DATED: July 11, 2018                              MORAN LAW

_Danon Sdeen_

Lisa Trinh Flint
Alex H. Feldman
Damon A. Schwartz
Attorneys for Plaintiffs, CATHERINE
ALBERI, in and through her Successor in
Interest, Dale Ernst, and DALE ERNST, an
individual

EXHIBIT "1"

1   MORAN LAW
    Michael F. Moran SB# 121665
2   Alexander H. Feldman SB# 279613
    Damon A. Schwartz SB# 297392
3   5 Hutton Centre Drive, Suite 1050
    Santa Ana, CA 92707
4   Telephone: (714) 549-0333
    Facsimile: (714) 549-0444

5   Attorneys for Plaintiff, CATHERINE ALBERI, in and through her Successor-In-Interest Dale
6   Ernst and DALE ERNST, an individual

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                             COUNTY OF LOS ANGELES

9   CATHERINE ALBERI, in and through her       )   CASE NO.:
    Successor-In-Interest Dale Ernst, and DALE  )
10  ERNST, an individual                        )
                                                )   DECLARATION OF DALE ERNST TO
11              Plaintiffs,                      )   COMMENCE LEGAL ACTION ON
                                                )   BEHALF OF THE DECEDENT,
12          vs.                                  )   CATHERINE ALBERI, PURSUANT TO
                                                )   CALIFORNIA CODE OF CIVIL
13  TARZANA HEALTH & REHABILITATION;)   PROCEDURE § 377.32
    SAVA SENIOR CARE CONSULTING, LLC;)
14  and DOES 1 through 30, inclusive,           )
                                                )
15              Defendants.                      )
                                                )
16                                              )
                                                )
17                                              )

18

19  I, Dale Ernst, declare:

20      1.      I am the Successor-in-Interest of CATHERINE ALBERI, deceased.  All

21  matters in this declaration are true of my own knowledge.

22      2.      The decedent's name is CATHERINE ALBERI.

23      3.      CATHERINE ALBERI died on October 2, 2017 at Moorpark Health Care

24  Center, in the County of Los Angeles.  Attached and marked as Exhibit "A" is a true and

25  correct copy of CATHERINE ALBERI's Death Certificate.

26      4.      No proceeding is now pending in California for administration of the

27  decedent's death.

28

                                         1

5.      I am the decedent's Successor-In-Interest, as defined in section 377.11 of the California Code of Civil Procedure and succeed to the decedent's interest in the proceeding in that as the decedent's surviving son, I am the beneficiary of the decedent's estate.

6.      No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this ___7___ day June, 2018, at ____Encino____, California.

_____
DALE ERNST, Declarant

DECLARATION OF DALE ERNST TO COMMENCE LEGAL ACTION ON BEHALF OF THE DECEDENT, CATHERINE ALDERI PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 377.32

EXHIBIT "A"

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# County of Ventura
### VENTURA, CALIFORNIA

3052017199331     **CERTIFICATE OF DEATH**     3201750004244

| Field | Value |
|---|---|
| NAME OF DECEDENT — FIRST | CATHERINE |
| MIDDLE | PAULINE |
| LAST | ALBERI |
| DATE OF BIRTH | 12/10/1941 |
| SEX | F |
| BIRTH STATE | MA |
| SOCIAL SECURITY NUMBER | 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 |
| MARITAL STATUS | DIVORCED |
| DATE OF DEATH | 10/02/2017 |
| AGE | 75 |
| TIME | 1210 |
| EDUCATION | HS GRADUATE |
| RACE | CAUCASIAN |
| USUAL OCCUPATION | HOMEMAKER |
| KIND OF BUSINESS | OWN HOME |
| YEARS IN OCCUPATION | 55 |
| RESIDENCE | 10611 INDEPENDENCE AVENUE |
| CITY | CHATSWORTH |
| COUNTY | LOS ANGELES |
| ZIP | 91311 |
| YEARS IN COUNTY | 50 |
| STATE/FOREIGN COUNTRY | CA |
| INFORMANT'S NAME | JACKIE ERNST |
| RELATIONSHIP | DAUGHTER |
| INFORMANT'S MAILING ADDRESS | 3110 CABERNET DRIVE, MIRA LOMA, CA 91752 |

| Parent | First | Middle | Last | Birth State |
|---|---|---|---|---|
| Father | CHARLES | PATRICK | THEODORE | ENGLAND |
| Mother | CATHERINE | P | DOWNEY | MA |

| Field | Value |
|---|---|
| DISPOSITION DATE | 10/07/2017 |
| PLACE OF FINAL DISPOSITION | OAKWOOD MEMORIAL PARK, 22601 LASSEN STREET, CHATSWORTH, CA 91311 |
| TYPE OF DISPOSITION | BU |
| SIGNATURE OF EMBALMER | NOT EMBALMED |
| NAME OF FUNERAL ESTABLISHMENT | ROSE FAMILY FUNERAL HOME |
| LICENSE NUMBER | FD1760 |
| SIGNATURE OF LOCAL REGISTRAR | ROBERT M. LEVIN, MD |
| DATE | 10/05/2017 |

| Field | Value |
|---|---|
| PLACE OF DEATH | MOORPARK HEALTH CARE CENTER |
| IF OTHER THAN HOSPITAL, SPECIFY | SNF |
| COUNTY | VENTURA |
| FACILITY ADDRESS | 4762 MAUREEN LANE |
| CITY | MOORPARK |

| CAUSE OF DEATH | Interval |
|---|---|
| IMMEDIATE CAUSE: CARDIAC ARREST | MINS |
| END STAGE KIDNEY DISEASE | YRS |
| CHRONIC KIDNEY DISEASE | YRS |
| HYPERTENSION | YRS |

OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH: NONE

| Field | Value |
|---|---|
| WAS OPERATION PERFORMED | NO |
| SIGNATURE AND TITLE OF CERTIFIER | SHERIF SAAD HENEIN M.D. |
| LICENSE NUMBER | A49133 |
| DATE | 10/05/2017 |
| TYPE NAME | SHERIF SAAD HENEIN M.D. |
| ADDRESS | 2230 LYNN ROAD SUITE 230, WESTLAKE VILLAGE, CA 91359 |
| DECEASED ATTENDED SINCE | 09/28/2017 |
| DECEASED LAST SEEN ALIVE | 10/02/2017 |

---

CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF VENTURA

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Ventura County Public Health Department. It it bears the date of issue in red ink.

DATE ISSUED    10 ... 06 ... 2017



HEALTH OFFICER
VENTURA COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

*001216816*

